UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRAIG CHANG, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 3:03cv2011(CFD) |
| | : | |
| ACI OPERATIONS PTY LTD, | : | |
|     Defendant. | : | |

**RULING ON MOTION TO DISMISS**

    The plaintiff, Craig Chang, brings this action against ACI Operations Pty Ltd ("ACI"), setting forth a claim for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and state law claims of breach of employment contract, promissory estoppel and negligent misrepresentation. ACI has moved to dismiss Chang's action pursuant to Fed. R. Civ. P. 12(b)(2) , arguing that this Court lacks personal jurisdiction. In the alternative, ACI seeks dismissal of count one, which sets forth a claim for violation of the ADEA, for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P 12(b)(6). For the following reasons, the motion to dismiss **[Doc. # 8]** is **DENIED**.

**I    Background**[1]

---

[1] The facts are taken from the complaint, documents attached thereto and affidavits submitted by the parties. Because ACI has moved to dismiss the complaint primarily on the ground that this Court lacks of personal jurisdiction over it, the Court may consider the information set forth in affidavits. See Homecare Federation, Inc. v. Paragon Scientific Corp., 27 F.Supp.2d 109, 112 (D.Conn. 1998) ("On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of showing that the court has jurisdiction over a defendant ... The use of affidavits and supporting materials from a defendant is likewise proper under this Rule.").
    When addressing the defendant's alternative argument that Chang has failed to state a claim in count one of the complaint, the Court will rely solely on those allegations made in the complaint. See Fed. R. Civ. P. 12(c): Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003).

Chang is a resident of Shelton, Connecticut. From 1982 through 1994, Chang was employed as the controller for Highfield Manufacturing Co. ("Highfield") in Bridgeport, Connecticut. Highfield is a division of a subsidiary of BTR, Plc. ("BTR"), a United Kingdom Listed Public Company with its principal place of business in London, England. In 1998, BTR was acquired by Owens-Illinois, Inc., an American company headquartered in Toledo, Ohio.

The defendant, ACI, is an Australian corporation, which maintains its principal place of business in Melbourne, Australia. ACI also was a subsidiary of BTR that, in 1998, became a wholly owned subsidiary of Owens-Illinois, Inc.[2]

In February 1994, the regional controller for ACI, Bruce Goode, who was employed in Australia, called Chang in Connecticut regarding an assignment in China. In March 1994, the plaintiff spent three days in Shanghai, China, with senior management from ACI, including Goode, discussing that assignment. Chang then flew to ACI's headquarters in Australia to further discuss that assignment. During those discussions, Chang expressed concern about his employment status after the completion of the assignment in China, as well as his desire not the forfeit the twelve years of seniority and pension contributions he had accumulated with Highfield. Chang claims he received assurances on both of those concerns from Brendan Mitchell, ACI's human resource manager.

Chang eventually signed an employment agreement with ACI in April 1994 ("the 1994 agreement").[3] ACI had sent that agreement to Chang in Connecticut, where he signed it and sent it back to ACI's headquarters in Australia. The agreement indicates that Chang was being

---

[2]The various entities are engaged in manufacturing packaging products, including glass and plastic containers. The relationships and the responsibilities of the various corporate entities are based on the limited record before the Court.

[3]A copy of the 1994 agreement was attached to and incorporated by reference into the complaint.

appointed to the position of Finance Manager for BTR Nylex Services (HK) Limited,[4] and that his primary work location would be in Shanghai.  Chang's "appointment will be for a period of three years, commencing early May at a date to be mutually agreed.  If the appointment is to be extended, the current terms and conditions of employment as outlined in this [agreement] will be subject to review and may be varied."  Chang then moved to Shanghai and began to work pursuant to the terms of the agreement.

In February 1998, Chang signed another employment agreement with ACI ("the 1998 agreement").[5]  That agreement provided that Chang was to continue serving in his "current expatriate assignment" until February 1998 and "then to transfer . . . as an expatriate to the position of Financial Controller, ACI Guangdong Glass Co. Ltd, Guangzhou, People's Republic of China."  In addition, the 1998 agreement provided that the "appointment will be for a period of three years commencing 1 March 1998.  If the appointment is to be extended, the current terms and conditions of employment as outlined in this letter will be subject to review and may be varied."

On January 6, 2000, Chang received his performance review for work performed during 1999.  In that review, he received the highest rating of "Performance Exceeds Expectations."  On September 30, 2000, Chang sent an email to Mitchell to investigate the possibility of an assignment with Owens-Illinois in Bridgeport, Connecticut, upon the expiration of the 1998 agreement.  On December 6, 2000, Chang was assured at a company meeting in Hong Kong that he would not be discharged from his position unless or until he was placed in an equivalent

---

[4] Chang claims that ACI was his actual employer.  For example, although the 1994 contract lists BTR Nylex Services (HK) Limited as his employer, it is on ACI letterhead.  In addition, the full company name used in the contract is "BTR Nylex Services (HK) Limited (ACI Packaging, China-ACI)."

[5] A copy of the 1998 agreement was also attached to and incorporated by reference into the complaint.

position. In early 2001, however, Chang was informed that his assignment was ending and that he was being replaced by a thirty-one year old person, whom Chang knew and had trained in accounting principles. Chang's replacement had significantly less accounting experience that Chang, and could not speak Chinese as well as Chang. On March 13, 2001, Chang attended a meeting at ACI's headquarters in Australia, during which he informed Mitchell that, due to his age and limited job prospects outside the company, he would be interested in a position with ACI anywhere in the world. On June 21, 2001, Mitchell presented Chang with a severance offer based only on seven years of service, and which did not include the twelve years Chang had worked for Highfield in Connecticut. On July 13, 2001, Chang was terminated without explanation.

On November 21, 2003, Chang brought this action in the U. S. District Court for the District of Connecticut, and ACI now moves to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. Each ground will be addressed in turn.

**II      Personal Jurisdiction**

A) Burden of Proof

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff bears the ultimate burden of establishing personal jurisdiction over a defendant. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); Hvide Marine Int'l Inc. v. Employers Ins. of Wausau, 724 F.Supp. 180, 182 (S.D.N.Y.1989). However, if jurisdiction is challenged prior to discovery, and if an evidentiary hearing has not been held, the plaintiff may defeat the motion by a good faith presentation of legally sufficient allegations. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir.1998). In other words, a plaintiff must make only a *prima facie* showing of jurisdiction to survive a motion to dismiss at that stage. DiStefano v. Carozzi North Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001); Jazini, 148 F.3d at 184; Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57

(2d Cir.1985); Indymac Mortgage Holdings, Inc. v. Reyad, 167 F.Supp.2d 222, 231-32 (D.Conn. 2001); Reynolds Corp. v. National Operator Services, Inc., 73 F.Supp.2d 299, 302 (W.D.N.Y. 1999). Additionally, the Court is required to construe all factual allegations and to resolve all doubts in plaintiff's favor. Whitaker v. American Telecasting. Inc., 261 F.3d 196, 208 (2d Cir. 2001); PDK Labs., Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); A.I. Trade Finance Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

In this case, because discovery is not complete, Change may defeat a motion to dismiss by making a *prima facie* showing of personal jurisdiction. See, e.g., Reyad, 167 F.Supp.2d at 231-32 (applying the *prima facie* burden of proof when discovery had not been completed); Chase v. Cohen, 2004 WL 3087557 at *2 (D.Conn., Dec. 29, 2004) (same).

B) Discussion

The complaint invokes both federal question and diversity of citizenship jurisdiction. The basis for federal question jurisdiction is Chang's claim pursuant to the ADEA. Because the ADEA does not provide for national service of process, Connecticut's personal jurisdiction rules apply. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) ("In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal statute does not specifically provide for national service of process' ") (quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990)). Connecticut's personal jurisdiction rules also would apply if this case were grounded entirely on diversity of citizenship jurisdiction. See Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990) ("In diversity cases, federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant").

Therefore, there are two issues pending before the Court: (1) does the Connecticut long-arm statute reach the defendant; and, if so, (2) does the exercise of jurisdiction meet the "minimum contacts" requirement and thus satisfy constitutional due process. See World Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Amerbelle Corp. v. Hommell, 272 F.Supp.2d 189, 193 (D.Conn. 2003).

### 1) Connecticut's Long Arm Statute

Here, both parties agree that the relevant long-arm statute is Connecticut General Statute § 33-929(f), which provides, in relevant part, that:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state . . . .

Taking all of the plaintiff's factual allegations as true and resolving all discrepancies in plaintiffs' favor, as the Court is required to do at this stage of the litigation, the Court finds that Chang has carried his prima facie burden of alleging that a contract was made in Connecticut, and that his claims arise out of this alleged contract. Chang has alleged and provided affidavit testimony to the effect that he received and signed, and thereby entered into, the 1994 agreement in Connecticut. These allegations are sufficient to make a prima facie showing pursuant to Section 33-929(f)(1). See Chemical Trading. Inc. v. Manufacture de Produits Chimiques de Tournan, 870 F.Supp. 21, 23 (D.Conn.1994) ("In Connecticut, a contract is considered made when and where the last thing is done which is necessary to create an effective agreement").

ACI, however, contends that Chang's claims actually arise under the 1998 agreement, which was entered into in China, thereby rendering jurisdiction lacking under § 33-929(f)(1). In the complaint and affidavit, Chang states that the 1994 agreement was for a period of three years, and was "subject to extension, after which Chang was to be placed into another position within the company." Further, Chang states that "[in] February 1998, Mr. Chang agreed to an extension of his appointment." Although the question of whether the 1998 agreement was an extension of the 1994 agreement or a new, separate contract is a close one, under the deferential standard of

review applicable to this Rule 12(b)(2) motion, the Court finds that Chang has made a prima facie showing that jurisdiction is proper pursuant to Section 33-929(f)(1).[6]

### 2) Due process considerations

The Court must next determine whether the exercise of jurisdiction pursuant to § 33-929 violates the due process clause of the Fourteenth Amendment of the United States Constitution. In making this determination, the Court must address two questions: (1) whether the defendant has sufficient minimum contacts with Connecticut to satisfy constitutional due process requirements; and (2) if so, whether the assertion of jurisdiction comports with the traditional notions of fair play and substantial justice.  See Reyad, 167 F.Supp.2d at 231.

In regard to "minimum contacts," it is well settled that:

> To have these minimum contacts, a defendant must purposefully avail himself of the privileges and benefits of the forum state.... [T]he defendant's conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there.

United States Surgical Corp. v. Imagyn Med. Tech., Inc., 25 F.Supp.2d at 44-45 (internal quotation marks and citations omitted).[7]  In other words, due process requires that the defendant be given "fair warning" that its activities in a state may subject it to suit there.  Metropolitan Life

---

[6] Chang also argues that, in addition to being "made in" Connecticut, the agreements partially were "performed in" Connecticut due to the tax provisions, residency requirements and the choice of law provisions set forth therein.  Because the Court has found that Chang has made a prima facie showing that the agreement was "made in" Connecticut, and that is sufficient to defeat the motion to dismiss, this alternative argument need not be addressed.

[7] Where, as here, the claim allegedly arises out of, or relates to, ACI's contacts with the forum, i.e., the contract made in Connecticut, Chang need only prove "limited" or "specific" jurisdiction under the test set forth in the text.  In situations where a claim does not relate to the defendant's contacts with the forum, however, a court may assert "general jurisdiction" over that nonresident defendant only where the defendant's contacts with the forum were "continuous and systematic."  See, e.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001) (distinguishing between special jurisdiction and general jurisdiction for purposes of a Due Process analysis).  Chang has not alleged that this Court alternatively has general jurisdiction over ACI.

Ins., 84 F.3d at 567; Reyad, 167 F.Supp.2d at 232. The purposeful availment requirement is satisfied if the defendant's contacts with the forum "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum" such that it "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Contacts that merely are "random, fortuitous, or attenuated" do not satisfy the due process requirements. Burger King, 471 U.S. at 475.

      Chang has alleged and provided affidavit testimony to the effect that representatives of ACI purposefully sought him out in Connecticut in order to offer him an employment contract, sent numerous communications to Connecticut in an attempt to finalize the employment agreement, and allowed him to sign and enter into the agreement in Connecticut. Moreover, in his affidavit, Chang avers that ACI's tax equalization program, which was contained in both the 1994 and the 1998 agreements, required constant communication during the entire length of the expatriate assignment from June of 1994 through July of 2001. In other words, Chang avers that he "was considered an expatriate and Connecticut resident for the duration of the assignment," and that all of his tax calculations and payments were completed by accountants employed by ACI in Connecticut. Chang also notes that the 1994 and 1998 agreements, as well as the tax equalization program, all expressly contemplated Chang being repatriated back to Connecticut at the completion of his assignment. Finally, Chang avers that ACI arranged for and paid for all of the moving expenses Chang incurred when leaving, and then returning to, Connecticut. Therefore, taking all of Chang's factual allegations as true and resolving all discrepancies in his favor, as the Court is required to do at this stage of the litigation, the Court finds that Chang has carried his *prima facie* burden of alleging that ACI "purposefully availed" itself of the privilege of doing business here and could reasonably anticipate being "haled into court" here in a dispute over that agreement. See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135,

8

152-53 (2d Cir. 2001) (communications to Connecticut and entry into agreement in Connecticut sufficient to establish minimum contacts).

Next, "the court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F.Supp. 1018, 1030 (D.Conn. 1993) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); accord Metropolitan Life Ins. Co., 84 F.3d at 568.  In other words, "[w]hile the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King, 471 U.S. at 477); see also H. Lewis Packaging, 296 F.Supp.2d at 239.

In it memorandum in support of its motion to dismiss, ACI merely claims that "the assertion of jurisdiction over ACI would fail to comport with traditional notions of fair play and substantial justice because a review of [Chang's] allegations regarding ACI confirm that Connecticut's interest in exercising jurisdiction over this non-resident defendant is minimal, if non-existent."  This conclusory statement fails to present a "compelling case" that it would be fundamentally unfair for this Court to exercise jurisdiction over ACI in this matter.

Consequently, because the Court finds that Chang has satisfied both the relevant Connecticut long-arm statute and the requirements of the Due Process clause, ACI's motion to dismiss pursuant to Rule 12(b)(2) is denied.

**III      Failure to State a Claim**

The Court must next consider ACI's motion to dismiss count one pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

A) Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all

9

factual allegations in the complaint as true and draws inferences in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991).  Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Weiss v. Wittcoff, 966 F.2d 109, 112 (2d Cir. 1992).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims."  United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D.Conn. 1990) (quoting Scheuer, 416 U.S. at 232).  In other words, "[t]he question is 'whether or not it appears to a certainty under existing laws that no relief can be granted under any set of facts that might be proved in support of' the claims."  Velez v. City of New London, 903 F.Supp. 286, 289 (D.Conn. 1995) (quoting De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978)).  In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  See Fed. R. Civ. P. 12(c): Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003); Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999).

In its motion to dismiss, ACI claims that count one fails to state a claim upon which relief may granted because: (1) the ADEA does not apply to ACI; and (2) Chang failed to exhaust his administrative remedies.  Each argument will be addressed in turn.

B) Application of the ADEA

ACI first contends that it is not subject to the provisions of the ADEA because it is a foreign corporation that is not controlled by an American employer.

The ADEA was enacted in 1967 to prevent discrimination by employers on the basis of age.  Morelli v. Cedel, 141 F.3d 39, 41 (2d Cir. 1998)   Accordingly, the Second Circuit has

instructed that, "[b]ecause the [ADEA] is remedial and humanitarian legislation, it should be construed liberally to achieve its purpose of protecting older employees from discrimination." Id. at 43 (quoting Moses v. Falstaff Brewing Corp., 525 F.2d 92, 93 (8th Cir. 1975)) (internal quotation marks omitted).  As to Americans employed in foreign countries, the ADEA provides that, "[if] an employer controls a corporation whose place of incorporation is in a foreign country, any practice by such corporation prohibited under this section shall be presumed to be such practice by such employer."  29 U.S.C § 623(h)(1).  Conversely, the ADEA also provides that "[t]he prohibitions of this section shall not apply where the employer is a foreign person not controlled by an American employer."  § 623(h)(2).[8]  "At a minimum, [these provisions mean] that the ADEA does not apply to the foreign operations of foreign employers–unless there is an American employer behind the scenes."  Morelli, 141 F.3d at 42; see also Dentry v. SmithKline Beechman Corp., 109 F.3d 147, 150 (3d Cir. 1997) ("the ADEA applies abroad only when (1) the employee is an American citizen and (2) the employer is controlled by an American employer"); Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240-41 (2d Cir. 1995) (an employer that merely controls, and does not own, an entity that has violated the ADEA may still be held liable under the Act).[9]  In order to determine whether an employer "controls a corporation" for purposes of § 623(h)(1), a court shall consider four factors of the relationship between the employer and the corporation: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.  29 U.S.C.

---

[8]See also 27 U.S.C. § 623(f)(1) (excusing noncompliance with certain provisions of the ADEA where compliance "would cause such employer, or a corporation controlled by such employer, to violate the laws of the country in which such workplace is located").

[9]The Second Circuit's opinion in Morelli provides an extensive discussion of the legislative history of subsections (h)(1) and (h)(2) of § 623. See also EEOC v. Arabian American Oil Co., 499 U.S. 244, 259 (1991) ("[t]he expressed purpose of these changes was to [make] provisions of the Act apply to citizens of the United States employed in foreign countries by U.S. corporations or their subsidiaries" [quotation marks omitted]).

§ 623(h)(3). Although there is little case law employing these four factors under the ADEA, a number of the Courts of Appeals, including the Second Circuit, have adopted these same four factors to address questions of when different employers should be considered a single employer for purposes of Title VIII. See Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 84 (3d Cir. 2003) (citing cases). Generally, those cases provide that "no single factor is dispositive; rather, single employer status under this test ultimately depends on all the circumstances of the case." Id. (quotations omitted). However, the Courts of Appeals have consistently noted that factor (3), centralized control of labor relations, is the most important. See, e.g., Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1322 (10th Cir. 2004); Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1006 (9th Cir. 2004); Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000); Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999); Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 764 (5th Cir. 1997). The Second Circuit has stated that centralized control of labor relations includes "tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions." Parker, 204 F.3d at 341.

Chang's affidavit sets forth numerous examples of centralized control of labor relations between ACI and BTK Nylex Services (HK) Limited. Both of those companies, however, are foreign corporations, and thus not bound by the provisions set forth in the ADEA. The complaint merely states that ACI is a wholly owned subsidiary of Owens-Illinois, and Chang has failed to provide any analysis of the four factors set forth in § 623(h)(3). This counsels in favor of dismissal of his ADEA claim.

Chang argues, however, that a section of the 1998 agreement makes ACI subject to the ADEA. That section provides: "Your employment shall be governed by the Law of the USA." Therefore, Chang argues that, "because the parties specifically contracted that [Chang's] employment would be governed by the laws of the USA, [ACI] can not now avoid the

application of US law and leave [Chang] without a remedy for [ACI's] violations of the ADEA." ACI maintains, however, that this choice of law clause does not compel the application of the ADEA because, while United States law may be applicable to the 1998 agreement, the ADEA itself specifically exempts from its application any employer that "is a foreign person not controlled by an American employer."  § 623(h)(2).  This circular logic is an insufficient ground upon which to dismiss Chang's ADEA claim.  In other words, taking the complaint in a light most favorable to Chang, and drawing all reasonable inferences in his favor at this time, it does not appear "to a certainty under existing laws that no relief can be granted under any set of facts that might be proved in support of the claims." Velez, 903 F.Supp. at 289.

      C) Exhaustion of Administrative Remedies

ACI next claims that count one fails to state a claim upon which relief may be granted because Chang failed to exhaust his administrative remedies.  More specifically, ACI claims that, although he filed a complaint with the EEOC, Chang failed to name ACI as a defendant.  Despite making this argument, ACI did not provide the Court with a copy of Chang's EEOC complaint.

Chang, however, did attach a copy of his EEOC complaint to his memorandum in opposition to the motion to dismiss.  The EEOC complaint expressly names "ACI Operations Pty Ltd" as the employer who allegedly discriminated against him.  Moreover, his affidavit in support of his EEOC complaint states: "Respondents are Owens-Illinois, Inc; ACI Operations Pty. Ltd." Therefore, ACI's claim as to lack of administrative exhaustion is without merit.

**IV**     **Conclusion**

For all of the forgoing reasons, ACI's motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted **[Doc. # 8]** is **DENIED**.

SO ORDERED this   9th   day of August 2005 at Hartford, Connecticut.

                    /s/ CFD
                **CHRISTOPHER F. DRONEY**
                **UNITED STATES DISTRICT JUDGE**